RATTET PLLC
*Attorneys for The Debtor*
202 Mamaroneck Avenue, Suite 300
White Plains, New York 10601
(914) 381-7400
Robert L. Rattet, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                              Chapter 11
                                                                    Case No. 18-14125 (SHL)
MANHATTAN RIVER GROUP, LLC

               Debtor.
-----------------------------------------------------------------x

## PLAN OF REORGANIZATION

Manhattan River Group, LLC, ("MRG"), hereby proposes the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, and the Disclosure Statement simultaneously filed by the Debtor, the following terms shall have the respective meanings set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires):

1.1    "Administrative Claims" shall mean all costs and expenses of administration of the chapter 11 case Allowed under Sections 503(b) or 330(a) of the Code and that are entitled to priority under Section 507(a)(2) which may include Claims pursuant to Section 506(c) of the Code.

1.2    "Allowed Claims" shall mean that portion of a Claim or Interest that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to;

(ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.3    "Article 78 Proceeding" shall mean the Debtor's Article 78 proceeding pending against the City of New York Parks & Recreation Department in New York County Supreme Court under Index No. 160704/2018

1.4    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

1.5    "Cash" shall mean legal tender of the United States of America or cash equivalents.

1.6    "Causes of Action" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws). Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer claim.

1.7     "Chapter 11 Case" shall mean the Debtor's above captioned Chapter 11 proceeding.

1.8     "Claim" is defined in Section 101(5) of the Code, and shall include, without limitation, Administrative Claims, any claims of whatsoever type or description against the Debtor, any claim for pre-Petition Date interest, post-Petition Date interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under Sections 550 and 553 of the Code and any claim against the Debtor that does not arise until after the commencement of the chapter 11 case for a tax entitled to priority under Section 507(a) of the Code.

1.9     "Code" shall mean the Bankruptcy Code, Title 11 U.S.C. Section 101 et. seq. as amended from time to time and applicable to this case.

1.10    "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.11    "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to Section 1129 of the Code confirming the Plan.

1.12    "Debtor" shall mean Manhattan River Group, LLC.

1.13    "Disputed" shall mean a Claim or Interest, or any portion of a Claim or Interest, that is not Allowed and is not either disallowed under a Final Order or has not been withdrawn.

1.14    "Effective Date" shall mean the date upon which the Confirmation Order becomes a Final Order.

1.15    "Final Order" shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending.

1.16 "Guaranteed Obligations" shall mean any monetary amounts due or payable by any Interest holders, or any of their affiliates, successors and assigns, pursuant to any Causes of Action, Claim, judgement, executory contract or unexpired lease to which Debtor is or was a party.

1.17 "Indemnification Obligations" means obligations of the Debtor, if any, to indemnify, reimburse, advance, or contribute to the losses, liabilities, or expenses of an Indemnitee pursuant to the Debtor's limited liability company agreement, certificate of formation, bylaws, policy, applicable law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtor arising prior to the Effective Date.

1.18 "Indemnitee" means Josh Rosen, Jerald Tenenbaum, Fernando Mateo, Alain Chevreux, JR Marina and Restaurant Management Corp., FM&AC Corp, Inc. and Morrison Tenenbaum, PLLC, together with all members, managers, directors, officers, and employees of the Debtor, in each case employed by the Debtor or serving as a member, manager director or officer immediately prior to or as of the Effective Date and acting in their respective capacities as such immediately prior to the Effective Date, who are entitled to assert Indemnification Obligations.

1.19 "Interest" shall mean the rights of the members and economic interest holders of the Debtor.

1.20 "Petition Date" shall mean December 20, 2018.

1.21 "Plan" shall mean this Chapter 11 Plan of Reorganization and any amendments hereto or modifications hereof made in accordance with the provisions of the Code.

4

1.22    "Priority Claim" shall mean a Claim, other than an Administrative Claim, that is entitled to priority under Section 507 of the Code.

1.23    "Reorganized Debtor" shall mean the Debtor as of the Confirmation Date, subject to entry of the Confirmation Order.

1.24    "Secured Claim" shall mean a Claim that is secured by a lien on property of the Debtor's estate in accordance with Section 506(a) of the Code.

1.25    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Code and Bankruptcy Rule 1007, and all amendments thereto.

1.26    "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim, including, without limitation, Claims based upon pre-Petition Date trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1**: shall consist of all Allowed Priority Claims other than Allowed Priority Tax Claims

**Class 2**: shall consist of all Allowed Unsecured Claims including any Allowed Claims arising out of the rejection of the Marina License.

**Class 3**: shall consist of all Allowed Interests in the Debtor.

In accordance with Section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the foregoing Classes.

## ARTICLE III
## TREATMENT OF CLAIMS UNDER THE PLAN

3.1     **Satisfaction of Claims**. The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction, release and discharge of their respective Claims against the Debtor.

a)     **Allowed Administrative Claims other than Claims of Professionals**: These Allowed Claims shall be paid in the ordinary course and according to the terms and conditions of the respective contracts with respect to those Claims.

b)     **Allowed Administrative DIP Loan Claim of Waterfront Hospitality Partners, LLC ("WHP").** Subject to the Confirmation Order becoming a Final Order, and the Plan becoming effective, WHP shall agree to waive its right to distribution on account of its Administrative DIP Loan Claim in full in exchange for receiving up to 18% of the Interests in the Reorganized Debtor.

c)     **Allowed Claims of Professionals**: Allowed Administrative Claims of Professionals shall be paid in full, in Cash, upon the later of (i) allowance by the Court pursuant to Section 330 of the Code and (ii) the Effective Date, or as soon thereafter as is reasonably practicable.

d)     **United States Trustee's Fees**: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. § 1930 and 31 U.S.C. §3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtor or the Reorganized Debtor. The Reorganized Debtor shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 Case.

e)      **Allowed Administrative and Priority Tax Claims**: Allowed Administrative (if any) and Priority Claims pursuant to 11 U.S.C. § 507(a)(8), if any, shall be paid in full, in Cash on or as soon as practical after the Effective Date.

f)      **Administrative Claims of New York City Parks and Recreation Department ("NYC Parks")**: At the inception of the Chapter 11 Case, the Debtor was the licensee of 2 licenses from the NYC Parks:

1. M28-M (Marina); and

2. M28-SB (Restaurant)

Marina License:  The Marina License has been rejected effective May 15, 2019, and an order has been entered reflecting same. The Debtor and the NYC Parks have reserved their respective Claims and defenses, including any Administrative claims for unpaid license fees. Any Allowed Administrative Claim arising out of the rejection of the Marina License shall be paid on the later of (a) the Effective Date or (b) the allowance of such Claim.

Restaurant License:  The Debtor is electing to assume the Restaurant License as of the Confirmation Date. All Claims and counterclaims are reserved, including cure of the Restaurant License fees and the Debtor's defenses, offsets and counterclaims thereto. Any Allowed Administrative Claim arising out of the assumption of the Marina License, including any Allowed cure Claims, shall be paid on the later of (a) the Effective Date or (b) the allowance of such Claim(s).

3.2     **Class 1**: The Holder of the Allowed Priority Claims, other than Allowed Priority Tax Claims, shall be paid in full in Cash on or as soon as practical after the Effective Date. The Allowed Class 1 Claims are unimpaired under this Plan and deemed to accept this Plan.

7

3.3    **Class 2**: Holders of Allowed Unsecured Claims shall each receive a total Cash distribution equal to a minimum of 40% of such Allowed Unsecured Claims in three (3) annual installments commencing ninety (90) days after the Effective Date (the "First Payment Date") according to the following schedule: (a) 10% of the Allowed Unsecured Claims on or before the First Payment Date; (b) 15% on or before the one year anniversary of the First Payment Date and (c) 15% on or before the second year anniversary of the First Payment Date. In addition, the Class 2 creditors shall receive, on a pro rata basis, the net proceeds, if any, recovered by the Debtor in the Article 78, after payment of all expenses, costs and legal fees incurred in connection with the prosecution of the Article 78, up to 100% of their Allowed Class 2 Claims, with no interest thereon. Treatment under this Section 3.3 shall be in full and final satisfaction of Class 2 Claims. Allowed Class 2 Claims are impaired under this Plan and holders of such Claims shall be entitled to vote on this Plan.

3.4    **Class 3**: Upon the Effective Date, all Interests shall be cancelled, subject to their rights of distribution of proceeds from the Article 78 as set forth below, and membership interests in the Reorganized Debtor shall be issued as follows: (a) WHP shall be issued up to 18% of the membership interests in the Reorganized Debtor in consideration of its waiver of right to repayment of its Administrative DIP loan Claim; and (2) 348 Hudson River Partners LLC shall be issued at least 82% of the membership interests in the Reorganized Debtor in consideration for its continuing obligations under the Management Agreement dated May 8, 2019, as amended, and fulfillment of its indemnification obligations set forth herein. Interest holders shall receive, on a pro rata basis based upon their Interests as of the Confirmation Date, the net proceeds recovered by the Debtor in the Article 78, after payment of (i) all expenses, costs and legal fees incurred in connection with the prosecution of the Article 78 and (ii) the

distributions to Class 2 Creditors provided in 3.3 above. The holders of Class 3 Interests are Impaired under the Plan.

3.5    **Acceptance by Impaired Class of Claims**. Class 2 shall have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting have voted to accept the Plan and (ii) more than one-half in number of the holders of such Allowed Claims actually voting have voted to accept the Plan.

3.6    **Presumed Acceptance/Rejection of the Plan**. Class 1 is unimpaired under and deemed to accept the Plan, and Class 3 is Impaired, but its votes may not be used to confirm the Plan. Their respective votes will therefore not be solicited

3.7    **Indemnification and Assumption of Obligations**.

(a)    The Reorganized Debtor will indemnify each Indemnitee to the same extent of any Indemnification Obligation in effect immediately prior to the Effective Date. The Reorganized Debtor's Indemnification Obligations shall (i) survive confirmation of the Plan, (ii) remain in full force and effect, and (iii) not be modified, reduced, discharged, impaired, or otherwise affected in any way. Any such Indemnification Obligations owed in connection with an event occurring after the Petition Date shall be paid as an Administrative Expense Claim under the Plan. Any such assumed obligations owed in connection with an event occurring before the Petition Date shall be treated as pre-petition Claims under the Plan, provided however that nothing in the Plan shall in any way limit, modify, alter or amend the limitation of liability of the Debtor members and managers set forth in limited liability company agreement, certificate of formation, bylaws, policy, applicable law, or specific agreement in respect of any Claims or Causes of Action against any Indemnitee.

(b)    If and whenever any of the Indemnitees become liable for any reason whatsoever

9

under any of the Guaranteed Obligations, 348 Hudson River Partners LLC and the Reorganized Debtor, along with their respective members, shall, within 45 days, unconditionally make payment for all amounts arising from any such Guaranteed Obligation.

## ARTICLE IV

## MEANS FOR EXECUTION

4.1     **Distributions of Cash**. Except as otherwise provided in the Plan, including without limitation Article VIII of this Plan, the initial distribution of Cash required to be first distributed to holders of Allowed Claims under the Plan shall be distributed by the Debtor within ten (10)   days after the Effective Date (other than Class 2 Claims which shall commence within ninety (90) days after the Effective Date), except that to the extent that a Claim becomes an Allowed Claim after the Effective Date, within ten (10) days after the order allowing such Claim becomes a Final Order.

4.2     **Means for Implementation**. The Plan shall be funded (a) with the Debtor's available cash on the Confirmation Date, (b) the Reorganized Debtor's ongoing cash flow following the Confirmation Date and (c) the proceeds if any, recovered in the Article 78. The Article 78 will be funded by the Interest holders, and the Reorganized Debtor shall have no role, responsibility or liability under the Article 78.

## ARTICLE V
## EXECUTORY CONTRACTS

5.1     **Assumption**. On the Effective Date all executory contracts, license and unexpired leases to which the Debtor is a party which have not been heretofore assumed, rejected or modified pursuant to Bankruptcy Court order shall be deemed assumed.

10

# ARTICLE VI
# GENERAL AND MISCELLANEOUS PROVISIONS

6.1     **Modification of the Plan**. The Debtor reserves the right to amend or modify the Plan in accordance with Section 1127 of the Code.

6.2     **Article and Section References**. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

6.3     **Payment Dates**. If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day, and shall be deemed to have been completed timely. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

6.4     **Notices**. Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to the Debtor:

Mr. Josh Rosen
Manhattan River Group, LLC
236 West 26th Street
Suite 801
New York, NY 10001

with a copy to:

Rattet PLLC
202 Mamaroneck Avenue, Suite 300
White Plains, New York 10601
Attn:   Robert L. Rattet, Esq.

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.

6.5     **Enforceability**. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

6.6     **Applicable Law**. Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

6.7     **Successors and Assigns**. The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

6.8     **Reservation of Rights**. Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case.

6.9     **U.S. Trustee Fees and Post Confirmation Reports**. The Debtor shall be responsible for filing post-Confirmation Date reports with the Bankruptcy Court, and shall pay all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. §

3717, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

## ARTICLE VII
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

7.1 **Objections**. An objection to either the allowance of a Claim or an amendment to the Debtor's Schedules shall be in writing and may either be filed with the Bankruptcy Court or pursued and resolved by other means by the Debtor at any time on or before the Effective Date, subject to an extension of such deadline by the Bankruptcy Court, for cause.

7.2 **Amendment of Claims**. A Claim may be amended after the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

7.3 **Reserve for Disputed Claims**. The Debtor shall reserve, in a separate account, held in trust for distribution pursuant to this Section, on account of each holder of a Disputed Claim, in Cash, the amount that would otherwise be distributable on such date and thereafter to such holder were such Disputed Claim an Allowed Claim on the Effective Date. The Cash so reserved for the holder of such Disputed Claim shall be distributed as provided in Section 4.1 hereof after such Disputed Claim becomes an Allowed Claim, in the amount allocable under Section 3.1-3 hereof to such Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Claim, regardless of when distribution thereon is made to or received by such holder.

# ARTICLE VIII
# EFFECT OF CONFIRMATION, DISCHARGE, SURRENDER AND CANCELLATION OF CLAIMS

8.1     **Vesting of Property**. On the Confirmation Date, title to and possession of any and all property of the Debtor's estate shall be re-vested in the reorganized Debtor free and clear of all liens, claims, interests and encumbrances of any kind, subject to and except as otherwise provided in the Plan.

8.2     **Discharge Granted Under Plan**. The Debtor shall receive a discharge in the Confirmation Order, which shall be governed by Code section 1141(d)(1).

8.3     **Releases**. The consideration distributed under the Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature against the Debtor, the Reorganized Debtor or any of the assets of the Debtor's estate.

8.4     **Exculpation**. *Neither the 348 Hudson River Partners LLC, Marina Hospitality Partners LLC, the Debtor nor any of their members, managers, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (hereafter, collectively, the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter 11 Case or the Plan except with respect to its obligations under the Plan, with the exception of any willful misconduct, gross negligence, criminal conduct, or unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing contained in this Section shall (a) effect a release of any claim*

14

*by the United States Government or any of its agencies, including Internal Revenue Service ("IRS") or any state and local authority whatsoever, including New York State Department of Taxation and Finance ("NYSDTF") and including, without limitation, any claim arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York State Tax Law, against the Released Parties, nor shall anything in this section enjoin the United States or any federal governmental agency including IRS, or any state or local authority, including NYSDTF, from bringing any claim, suit, action or other proceedings against any Released Party referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York State Tax Law, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies, including IRS, or any state and local authority whatsoever, including NYSDTF, including liabilities arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York State Tax Law, against the Parties referred to herein, or (b) limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

        **8.5**     **Confirmation Injunction.** Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests, including Administrative Claims, against or in the Debtor shall, as of the Effective Date, be enjoined from:

        (a)     commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or

15

*other forum) against the Debtor or reorganized Debtor with regard to such entity's Claim against the Debtor;*

*(b)    enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor or reorganized Debtor with regard to such entity's Claim against the Debtor;*

*(c)    creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or reorganized Debtor, the property of the Debtor or reorganized Debtor, or any successor-in-interest to the Debtor or reorganized Debtor with regard to such entity's Claim against the Debtor;*

*(d)    asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the property of the Debtor, or any successor-in-interest to the Debtor with regard to such entity's Claim against the Debtor; and*

*(e)    acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.*

## ARTICLE IX
## DISTRIBUTIONS AND UNCLAIMED PAYMENTS

Except as otherwise provided herein, in the event any claimant fails to claim any distribution hereunder within 120 days from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such Cash was distributed shall be treated as a disallowed Claim. Distributions to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing to the Debtor. The Debtor

16

shall use its best efforts to obtain current addresses for all claimants. All unclaimed cash shall be returned to the reorganized Debtor.

## ARTICLE X
## EVENTS OF DEFAULT

10.1    An event of default shall occur if the Debtor shall fail to make any payment when due under the Plan or shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Debtor, Debtor's counsel and the Bankruptcy Court.

10.2    Following an event of default, if such default has not been cured within ten (10) days thereafter, any holder of a Claim, payment of which is in default, shall have the right to (a) accelerate and demand payment due to such holder under the Plan; and/or (b) commence an action against the Debtor in the Bankruptcy Court or United States District Court to compel payment or otherwise to enforce the default.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)    To determine all controversies relating to or concerning the allowance of and/ or distribution on account of Claims or Interests upon objection thereto, including the estimation of any Claim under Section 502(c) of the Code;

(b)    To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Code, including any and all applications for compensation for professional fees and expenses;

(c)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28U.S.C Sections 157 and 1334;

17

  (d)  To determine all disputed, contingent or unliquidated Claims;

  (e)  To determine requests to modify the Plan pursuant to Section 1127 of the Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Code;

  (f)  To make such orders as are necessary or appropriate to carry out the provisions of, and to enforce, the Plan;

  (g)  To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan; and

  (h)  To enter a final decree closing the Chapter 11 Case.

Dated: New York, New York
   June 11, 2019


MANHATTAN RIVER GROUP LLC


By: */s /Josh Rosen*
   Josh Rosen, Manager