UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                    Chapter 11

MANHATTAN RIVER GROUP,                                Case No. 18-14125 (SHL)

                                    Debtor.
-----------------------------------------------------------X

**STIPULATION AND ORDER: (I) SETTLING AND COMPROMISING CLAIMS BETWEEN DEBTOR AND THE CITY OF NEW YORK AND ITS AGENCY, THE NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION; (II) DETERMINING AND RESOLVING CERTAIN PENDING MOTIONS; AND (III) PROVIDING FOR RELATED RELEASES AND RELIEF**

RECITALS:

1.      On December 20, 2018 (the "Petition Date"), Manhattan River Group ("MRG" or the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. MRG has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

2.      The U.S. Trustee was unable to appoint an Official Committee of Unsecured Creditors.

3.      The Debtor is a small business debtor within the meaning of Section 101 of the Bankruptcy Code.

4.      MRG has historically operated a restaurant lounge on the premises located at the Dyckman Marina, 348 Dyckman Street, New York, New York known as La Marina.

5.      The Debtor and the City of New York Department of Parks & Recreation (the "Parks Department.") entered into two license agreements dated June 25, 2009, for operation of the Dyckman Marina (the "Marina License Agreement"), and operation of a full-service

restaurant and a lounge at the Dyckman Marina, which was subsequently amended (as amended, the "Restaurant License Agreement"), in Manhattan, New York. (Both the Marina License Agreement and the Restaurant License Agreement, as respectively amended, collectively, the "License Agreements," are annexed to the Declaration of David Cerron, ECF No. 45, as Exhibit "A").

6.      The Debtor is the licensee of the real property located at Dyckman Marina operated as La Marina ("La Marina"), which is on the western end of Dyckman Street in the City of New York, County of New York, and bounded by Dyckman Street to the north, the Hudson River on the west and south, and Amtrak's Empire Corridor on the east (the "Licensed Premises"). The Licensed Premises is under the jurisdiction of the City acting by and through the Parks Department.

7.      The Debtor asserts that it operated both the Marina and Restaurant premises successfully until 2018. The Parks Department disputes this and asserts that both the restaurant and marina operations were in substantial default by 2018. The Parks Department, on July 20, 2018, issued a determination, prohibiting the Debtor from (1) offering valet parking and (2) holding ticketed beach events. The Debtor asserts that this action was wrongfully taken, and that the Parks Department failed to provide proper notice or opportunity to cure; the Parks Department disputes this. The Debtor asserts that the loss of revenues from the Parks Department's July 20, 2018 determination, which the Debtor also asserts were expressly permitted by the Parks over the course of six years, severely impacted the Debtor's ability to successfully operate under the 2 licenses. The Parks Department disputes that the loss of those revenues was the primary reason that the Debtor was unable to operate, and asserts that other factors, including the loss of the Debtor's license to serve alcoholic beverages contributed.

8.	On November 16, 2018, the Debtor commenced an Article 78 proceeding in Supreme Court of the State of New York, New York County (the "State Court"), under Index No. 160704/2018 (the "Article 78 Proceeding").  The Parks Department has disputed the claims asserted by the Debtor in the Article 78 Proceeding and maintains that the Article 78 petition lacks any merit, and that the Debtor is not entitled to any monetary damages based upon any of the allegations or claims set forth in the petition.

9.	Unless and until the Article 78 Proceeding could be favorably determined for the Debtor, and because the Debtor could not identify other sources of funding, the Debtor determined it was financially unable to operate the two License Agreements, and, as a result, was unable to continue its operations through the winter of 2018 / 2019. This has resulted in a loss of revenues and accumulation of arrears to, inter alia, the Parks Department under the two License Agreements.

10.	By Order of the Bankruptcy Court entered on May 23, 2019 (ECF Docket No. 48; the "Marina License Rejection Order") the Court entered an order, on consent of the Debtor, rejecting the Marina License Agreement, subject to the Debtor's reservation of rights to seek damages arising from the rejection and the Parks department rights to file a rejection claim under Section 502(b)(6) of the Bankruptcy Code (the "Marina Rejection Claim").

11.	The Debtor acknowledges that the foregoing documents are license agreements inasmuch as the City asserts that it cannot, as a matter of law, alienate parkland in the absence of legislative approval from the state legislature.

12.	The Debtor has heretofore filed with the Bankruptcy Court the following motions:

3

a) Motion to Extend Time to Assume or Reject Debtor's License Agreement with NYC Dept. of Parks & Recreation Pursuant to Section 365(d)(4) of the Bankruptcy Code and Request for Emergency Hearing on Shortened Notice (ECF No. 26 and subsequent papers; the "Motion To Extend Time");

b) Motion to Authorize Debtor to Enter Into Management Agreement and Request for Entry of Order Scheduling Preliminary Hearing on Shortened Notice filed by Robert Leslie Rattet on behalf of Manhattan River Group ("Management Motion", ECF No. 34 and subsequent papers; the "Management Approval Motion"); and

c) Motion for Authority to Obtain Credit *and for Order Scheduling Hearing on Shortened Notice* filed by Robert Leslie Rattet on behalf of Manhattan River Group ("Financing Motion", ECF No. 37 and subsequent papers; the "DIP Financing Motion")

13. The Bankruptcy Court has from time to time extended the Debtor's time to assume or reject the Restaurant License, to the extent such license is assumable under Section 365 of the Bankruptcy Code and subject to the filed objection of the Parks Department described below.

14. On May 13, 2019, the Parks Department filed an omnibus objection to the Management Approval Motion and the DIP Financing Motion, respectively (the "Management/DIP Objection").

15. On May 13, 2019, the Parks Department also filed a motion to lift the automatic stay to permit termination of the Licenses Under 11 U.S.C. §362(d)(1) and in the alternative determining that the Licenses may not be assumed or assigned Under 11 U.S.C. § 365

4

and Related Relief (the "Lift Stay Motion"). The Debtor has filed an objection to the Lift Stay Motion, which motion has yet to be determined by the Bankruptcy Court.

16. On June 11, 2019, the Debtor filed a Plan of Reorganization (the "Plan") and accompanying Disclosure Statement (the "Disclosure Statement"). To the extent not already done as of the date of this Stipulation, the Debtor intends to amend the Plan prior to confirmation, to, among other things, incorporate the terms of the Marina License Rejection Order and this Stipulation and Order.

17. On June 18, 2019, the Parks Department and the City filed a proof of claim in the amount of $198,388.37 for prepetition arrearages, of which $42,958.50 is secured by security deposits (the "Parks Prepetition Claim").

18. On June 25, 2019, the Bankruptcy Court entered an order (a) conditionally approving the Disclosure Statement and (b) scheduling (i) final approval of the Disclosure Statement and (ii) confirmation of the Plan for July 29, 2019 @11:00 a.m. (the "Initial Confirmation Hearing Date").

19. The Debtor and the Parks Department have engaged in arms-length negotiations in an effort resolve all issues concerning the disputed matters described in detail above.

20. The parties have agreed to resolve all outstanding claims, motions, actions and issues in accordance with the terms of this Stipulation, which Stipulation shall be subject to approval by the Bankruptcy Court.

NOW, THEREFORE, in consideration of the above stated premises, and fair and valuable consideration having been given, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED by the undersigned parties as follows:

1. This Stipulation is subject to approval by the Bankruptcy Court (the "Bankruptcy Court Approval") and to such further approvals, clearances and registrations as may be required under state, city or federal statutes, laws, rules or regulations (the "Additional Approvals").  For clarity, the following definitions shall apply to this Stipulation. The date upon which the Bankruptcy Approval order become final and no longer subject to appeal shall be the "Bankruptcy Approval Date."  The date upon which the Additional Approvals become final shall be the "Additional Approvals Date."  The date upon which the Bankruptcy Court order confirming the Plan becomes final and no longer subject to appeal shall be the "Confirmation Date."  The date upon which the confirmed Plan becomes effective pursuant to its terms shall be the "Plan Effective Date."

2. The terms and conditions of this Stipulation shall become fully and finally effective, and binding on the City (the "Agreement Effective Date") only upon the latest to occur of: (i) the Bankruptcy Approval Date; (ii) the Additional Approvals Date; and (iii) the Plan Effective Date.

3. Upon the Agreement Effective Date, the Debtor shall withdraw and voluntarily discontinue the Article 78 Proceeding with prejudice. Further, upon the Agreement Effective Date, the Debtor and its principals will be deemed to have waived and released any and all claims against the City of New York and the Parks Department and all officials, employees, mangers, directors, agents, representatives, attorneys and assigns of the City of New York (including but not limited to those at the Parks Department).  Notwithstanding the above, the Debtor and its

6

principals shall promptly execute any release and further stipulation to be filed in the State Court, or other document reasonably required to effectuate the terms of this Stipulation.

4. The Debtor hereby acknowledges the Restaurant License Agreement is a license. Upon the Agreement Effective Date, the Debtor will transfer, convey and assign its interest, if any, in such of the marina-related equipment remaining at the Marina, including docks, moorage, equipment, restroom building and improvements to the City as the City will direct, and will remove, at its sole cost and expense, any remaining equipment, structures or detritus as the City may direct by September 1, 2019, except for the beach bars which shall be removed by October 31, 2019, and the changing trailer, which must be removed by December 31, 2019.

5. Upon the approval and entry of this Stipulation by the Bankruptcy Court, the operation of the Restaurant by 348 Hudson River Partners LLC (the "Manager") as manager, may commence, subject to the terms of the Restaurant License Agreement and the additional terms set forth below. The authority of the Manager to operate the restaurant under this provision shall terminate on the earlier to occur of: (i) the date upon which the shares of the current equity holders are cancelled and the new shares of the reorganized debtor are issued to the new equity owners pursuant to the confirmed Plan (that is, the Plan Effective Date); or (ii) December 31, 2019.

6. Pursuant to and subject to confirmation of the Plan, the Parks Department shall be deemed to consent to the assumption by the reorganized debtor of all of the Debtor's rights and obligations under the Restaurant License Agreement, subject to the terms of the Restaurant License Agreement and the additional terms set forth below, and pursuant to the provisions of the Plan.

7

7. The Debtor and 348 Hudson River Partners LLC (the "Manager"), the proposed manager, have agreed that the Debtor's former and current equity holders shall have no present or future economic or other interest in the Manager, and shall have no involvement in the operation of the restaurant at any time. Further, the Debtor and Waterfront Hospitality Partners LLC (the "Lender"), the proposed lender, have agreed that: (i) the Debtor's former and current equity holders shall have no present or future economic or other interest in the Lender, and shall have no involvement in the Lender's relationship to the Debtor or reorganized Debtor at any time; and (ii) any funds advanced by the Lender and used for approved purposes shall have a non-priority administrative claim status, which shall be treated as a contribution to capital upon confirmation of the Plan

8. In reliance on such agreement, the Parks Department hereby modifies its position as expressed in the Management/DIP Objection to permit the operation of the restaurant by the Manager, consistent with the terms hereof and the operating plan agreed to by the Manager and the Parks Department, and as set forth in this Stipulation.

9. The Restaurant License Agreement shall be amended, as described below, including but not limited to provisions stating that the Debtor and the Manager will no longer have access to or control over the Marina beach area, which shall be subject solely to the control of the Parks Department.

10. The parties will agree to re-draw Restaurant License Agreement boundaries map as set forth in Exhibit A hereto.

11. The parties agree that the Debtor and the Manager shall not use any outdoor amplified sound after 10:00 pm.

12. The Parties agree that the Debtor and the Manager shall operate the Restaurant License pursuant to the following schedule, including the following:

Seasonal Schedule:

a. Restaurant Season:
    i. May 15—September 30 (or other such dates as may be approved by Parks)

b. Weekly Schedule:
    i. Monday—Thursday: 3PM-11PM
    ii. Friday—Saturday 11AM-12:30AM
    iii. Sunday: 11AM-11PM
    iv. Alterations to these hours may be made with the prior written approval of Parks, which approval shall not be unreasonably withheld or delayed

c. In-Season Special Events:
    i. Restaurant may be closed for a private Special Event a maximum of two (2) times during the May 15—Sept 30 Restaurant Season (limited to a Monday, Tuesday or Wednesday)

d. Parks-Approved schedule for food-based community events at the Restaurant involving ticketed entry. Tickets available at the door and by presale by the Debtor and Manager only, and Parks shall approve all ticket prices) ("Community Events"):

    i. Memorial Day weekend event (3 days)
    ii. Father's day event (on or about June 16th. 1 day)
    iii. Independence Day event (on or about July 4th. 1 day)
    iv. Dominican Day (2nd Saturday and Sunday in August. 2 days)
    v. Labor Day event (1 day)
    vi. Octoberfest (end of September. 3 days)

e. Community Event Location and Hours subject to Parks written approval, but all Community Events must end by 10:00 p.m. unless they are located inside the Restaurant.

f. No events may be held by outside promoters.

g. Off Season:
    i. Restaurant Closed.
    ii. Special Events with the prior written approval of Parks, which approval shall not be unreasonably withheld or delayed
    iii. Additional Community Events with Parks approval which approval shall not be unreasonably withheld or delayed

9

      iv.   Notwithstanding the above, the Restaurant shall be allowed to operate on the first or second Sunday of every month and feature a community-oriented food event such as a themed brunch or something similar. Said event can be ticketed.

13.    The Parties agree that the Debtor and the Manager shall not employ or provide valet parking during the Restaurant Season, During the Off Season, Debtor and Manager may provide valet parking to a garage off of Parkland during Special Events, subject to terms and conditions acceptable to the Parks Department.

14.    The Parties agree that the Debtor and the Manager shall not host or allow any concerts or music-oriented events (including, but not limited to, events featuring live or recorded music/DJ). Notwithstanding the foregoing and for clarification, music may be played: (i) at and during regular restaurant service; and (ii) at the Parks-approved Special Events and Community Events during the Restaurant Season or during the Off Season, so long as it is incidental to food-related or other community-related activities.

15.    The Parks Department shall waive any and all rejection, pre-petition and post-petition claims and rights to distribution under the Plan with respect to the rejected Marina License Agreement.

16.    The Parks Prepetition Claim shall be allowed in full for voting purposes only. The Parks Department shall waive any and all pre-petition and post-petition/cure claims and/or right to distribution under the Plan (but not Plan voting rights) for all pre-petition and post-petition license fee arrears under the Restaurant License Agreement through July 31, 2019.

17.    The Parks Department shall reduce the Restaurant License Agreement minimum annual license fees by 50% from August 1, 2019 through the end of the operating year (March 31, 2020).

18. The Parks Department does not oppose issuance of a new liquor license to the Debtor's new ownership under the Plan.

19. The Parks Department shall be deemed to vote all of its claims for the claims waived hereunder in favor of the Plan, provided that the terms of this Stipulation and Order, and the Marina License Rejection Order are complied with by the Debtor.

20 The Parks Department shall release the Debtor's members from all future obligations and liabilities resulting from activities under the BIG TIER II Grant (the "Grant") occurring on and after May 23, 2019, except for any obligations and liabilities resulting from the Debtor's members activities prior to May 23, 2019. In addition, the Debtors members shall use reasonable efforts to assist the Parks Department in connection with any Grant compliance matters arising from activities under the Grant that occurred prior to May 23, 2019.

21. The Debtor and the Manager shall continue to have use of the current AV closet and one interior network room for its IT and audio infrastructure in the Marina Quonset hut, provided that such shall not be used for regular offices of Debtor and that access, solely for purposes of maintenance and repair, must be arranged through the Parks Department. The Debtor and the Manager will otherwise vacate all areas of the Quonset hut and remove, at its sole cost and expense, all remaining equipment and other materials on or before September 1, 2019, except for the changing trailer, which must be removed by December 31, 2019. Moreover, to the fullest extent permitted by law, Debtor and the Manager shall indemnify, defend and hold the City and its officials and employees, harmless against any and all claims, liens, demands, judgments, penalties, fines, liabilities, settlements, damages, costs and expenses of whatever kind or nature (including, without limitation, attorneys' fees and disbursements) arising out of or related to the current AV closet and one interior network room for its IT and audio infrastructure in the Marina

Quonset hut. Insofar as the facts or law relating to any of the foregoing would preclude the City or its respective officials and employees, from being completely indemnified by Debtor and the Manager, the City and its officials and employees, shall be partially indemnified by Debtor and the Manager to the fullest extent permitted by law.

22. The Parks Department shall immediately (a) take all necessary steps to transfer the Con Edison account servicing the beach area, Marina, Quonset hut and docks to the City of New York and (b) pay all electricity charges related to the operation thereof.

23. The Parks Department shall (a) submeter the existing water service at its cost and expense and (b) pay all water/sewer charges related to the operation of the beach area, Marina, Quonset hut and docks.

24. The Parks Department shall be responsible for electricity and water/sewer charges related to the operation of the beach area, Marina, Quonset hut and docks for the period commencing on May 23, 2019 and continuing through the date such utility accounts are transferred to the City of New York, or utilities sub metered, as the case may be.

25. The Debtor and the Manager shall not be responsible for maintenance of the beach area north of the concession boundary.

26. Debtor and the Manager shall relocate the changing trailer and vacate the Quonset hut office and the beach on or before December 31, 2019.

27. On or before the Confirmation Date, the Debtor shall remove at its sole cost and expense all of the equipment and other materials that are remaining on the Marina License premises and the beach area which are unwanted by the Parks Department, including but not limited to the items set forth in the e-mails, photographs and other communications among the parties.

18-14125-shl   Doc 70   Filed 08/05/19   Entered 08/05/19 17:31:16   Main Document
Pg 13 of 15

28	The Parties recognize that certain changes to the Restaurant's operations pursuant to this Stipulation will require an amendment (the "Amendment") to the Restaurant License Agreement, including, to the extent applicable, processes proscribed by the NYC Concession Rules, which Amendment shall be subject to any and all City authorization, approvals, permits, and compliance with other processes which may be necessary, including registration with the Comptroller of the City of New York.  The Parties agree to use best efforts to effectuate such Amendment.

.29.	Upon the Bankruptcy Approval Date, the Debtor and the Parks Department are hereby authorized to implement the applicable terms and provisions of this Stipulation.  Upon the Agreement Effective Date, all the terms shall be binding upon all of the Debtor's creditors and any subsequent trustee appointed in the Debtor's Chapter 11 case.  This Stipulation and Order shall be incorporated into the Plan and any Order confirming the Plan

30.	The Bankruptcy Court shall retain exclusive jurisdiction over the terms, implementation and enforcement of this Stipulation and any disputes or controversies that may arise hereafter regarding it.

Dated:   August  5, 2019

        RATTET PLLC
        *Attorneys for the Debtor*
        202 Mamaroneck Avenue
        White Plains, New York 10601
        (914) 381-7400

        By: */s/ Robert L. Rattet*
            Robert L. Rattet

13

MANHATTAN RIVER GROUP LLC

By:*/s/ Jerald Tenenbaum*
   Jerald Tenenbaum, Managing Member

ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
*Attorney for the City of New York and*
*The New York City Department of Parks and Recreation*
100 Church Street, Room 5-213
New York, New York 10007
(212) 356-2113

By: */s/ Zachary B. Kass*
   Zachary B. Kass, Senior Counsel

DEPARTMENT OF PARKS AND RECREATION

By: */s/ Alyssa Cobb Konon*
   Alyssa Cobb Konon
   Title: Deputy Commissioner

348 HUDSON RIVER PARTNERS LLC

By:*/s/ James Goldman*
   James Goldman, Manager

**SO ORDERED THIS**
**5TH DAY OF AUGUST, 2019**

*/s/ Sean H. Lane*
HON. SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# Dyckman Marina and Restaurant Licensed Premises



*includes seven (7) parking spaces

Shared Entranceway

Restaurant Premises

Marina Premises



NYC Parks